IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN ORLESKI,                              )
                                           )
                    Plaintiff,             )
        v.                                 )          C.A. No. 05-317 Erie
                                           )          District Judge McLaughlin
CHARLES BOWERS, Chief of City of Erie      )
Police Department, *et al.*,               )
                                           )
                                           )
                    Defendants.            )


## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.


This matter is before the Court upon a Motion for Summary Judgment filed by Defendants' Charles Bowers, Timothy Stucke, and the City of Erie.


### I.       BACKGROUND

In January, 2005, the City of Erie Bureau of Police hired Plaintiff, John Orleski ("Orleski") as a Probationary Police Officer (PPO). Orleski was assigned to Corporal Daniel J. Morris ("Morris") as his Field Training Officer (FTO) for his on the job training. As part of his field training with Morris, Orleski operated a police cruiser three out of five days each training week. (John Orleski Deposition, pp. 32-33, Ex. 1, Plaintiff's Opposition to Defendants' Motion for Summary Judgment).

According to Morris, Orleski frequently violated traffic laws and ignored admonitions to drive more carefully while operating the police cruiser. (Morris Affidavit, Defendant's Ex. C). Specifically, Morris contended that Orleski repeatedly exceeded posted speed limits, drove the wrong way on one-way streets, sent and received text messages on his cell phone while driving, ran

1

a red light on one occasion, and backed into a fire hydrant.  Eventually, Morris informed his superior, Sgt. Thomas Falconer, of Orleski's alleged driving problems and expressed his opinion that Orleski posed a danger to himself, his training officer, and the public.  (Id.)

On April 6, 2005, Sgt. Falconer advised Deputy Chief Timothy Stucke ("Stucke"), who was in charge of the patrol division, of Morris' concerns.  Sgt. Falconer requested that the Termination Review Committee review the matter and make a decision as to whether to continue Orleski's training.  (Bureau of Police Memorandum, Defendants' Exhibit F).  On the same date, Stucke, on instructions from Chief Charles Bowers ("Bowers"), notified Orleski that "due to major safety violations," he would be suspended with pay.  (Bureau of Police Memorandum, Defendants' Exhibit G).  Orleski claims that Morris exaggerated his alleged driving difficulties and on one occasion requested that he drive the wrong way down a one-way street. Alternatively, he argues that if his driving skills were, in fact, as inadequate as alleged, he should have been offered remedial training from the department prior to being discharged. In this regard, Orleski claims that new officers were informed, during their initial training period, that remedial training was available if they were lagging behind in any specific area.  It is undisputed that Orleski never requested or was offered remedial driving training.

On April 8, 2005, Orleski was a patron of Papa George's Country Bar and Grill, a bar located in downtown Erie, when he allegedly became involved in an altercation with a female acquaintance.  The woman in question informed bar security that Orleski had been harassing her and, as a result, Orleski was asked to leave by the bar owner. (Gerald Hayford Deposition, pp. 6-8; Orleski Deposition, pp. 60-62).

On April 8, 2005, the Field Training Officer Termination Review Committee convened to review Orleski's suspension and future employment.  Among those present were Stucke, Morris and Sgt. Falconer.  The Committee recommended that Orleski be terminated as a result of accumulating ten cruiser operation deficiencies in 15 days of driving.  The Committee considered offering remedial training but concluded that doing so would pose an unacceptable risk to the

safety of another training officer and the public.  (Bureau of Police Memorandum from FTO Termination Review Committee, Defendants' Exhibit I; Stucke Deposition, pp. 60-64).

On April 15, 2005, Orleski was formally placed on unpaid suspension and informed that notification of his termination would follow.  On April 19, 2005, Orleski completed an application for employment with the Veteran's Administration (VA) in Erie for a position as a police officer.  On the application, Orleski indicated that his employment with the City of Erie had terminated in 4/2005.

On June 26, 2005, Orleski was allegedly involved in another incident at Papa George's Bar.  The manager asked bouncers to remove Orleski from the premises, barred him from ever returning, and called the police.  When officers arrived, they observed Orleski wearing an Erie Police Department t-shirt.  (Hayford Deposition, pp. 8-13).  Orleski, however, denies that he had been causing a disturbance at the bar and asserts that the manager informed Orleski that he had been removed from the premises pursuant to Stucke's orders.

On July 1, 2005, Stucke issued a Memorandum informing all police personnel that Orleski had been barred from Papa George's and alleging that Orleski had been wearing an EPD t-shirt and holding himself out to be a police officer.  (Bureau of Police Memorandum, Defendants' Exhibit O).  Orleski admits that he was wearing the t-shirt, which he says that he purchased at a privately run uniform shop, but denies that he made any attempt to pass himself off as a police officer while at the bar.  (Orleski Deposition, p. 65).

At some point in June, 2005, Orleski was tentatively selected by Chief Robert Reyes ("Reyes") for the position as a police officer with the VA.  Geralynn Nies, the Human Resources Manager for the VA, testified that Orleski had been in a group of three finalists for the position and that Chief Reyes had recommended Orleski for the position to the VA Director, who signed off on the recommendation.  (Nies Deposition, pp. 18-19).  Shortly thereafter, after hearing that Orleski was being considered for the position, Bowers phoned Reyes and informed him, "one

police chief to another," that Orleski had been terminated previously due to safety concerns arising from his driving.  (Bowers Deposition, pp. 8, 27-28, 36-37).

In addition to raising the concerns about Orleski's driving abilities, Orleski asserts that Bowers also made several defamatory and untrue remarks about him that caused Reyes to reconsider his tentative selection of Orleski for the open position.  Specifically, Orleski contends that Bowers relayed to Reyes that Orleski had been impersonating a police officer, causing disturbances at a local bar, and had been accused of female harassment. (See Bowers Deposition, pp. 14-15; Plaintiff's Response, Ex. 8, Reyes Report of Contact).  Orleski denies the accuracy of these allegations.

On July 6, 2005, Lori Snyder, Human Resources Assistant for the Erie VA, conducted a telephone interview with Bowers pursuant to the VA hiring protocol for processing applications for police positions.  During this interview, Bowers informed Snyder that Orleski had failed his probationary training and that his driving problems had motivated the firing.  In addition to these statements, Orleski contends that Bowers also informed Snyder that Orleski "had off duty problems with women, but no one wanted to push the issue," and that Orleski had been "barred from a downtown establishment due to his actions."  (Snyder Deposition, p. 15).  Shortly thereafter, Orleski was informed that he had not received the position with the VA.

Orleski claims that after his suspension from the Erie Police Department, he was followed on various occasions by marked Erie police cruisers.  (Orleski Deposition, pp. 75-80). He asserts that on June 29 and July 24, 2005, an EPD police car followed him for five blocks until he reached his home and that on one occasion the officer driving the vehicle told him to "slow the f--- down" and proceeded to watch his house for no reason afterwards.  Orleski also suggests that officers occasionally drove around his block and parked at the top of his street. Throughout this time, Defendant Stucke was in charge of patrol.

On October 25, 2005, Orleski filed the instant complaint.  He asserted the following claims: a violation of his due process rights relative to his failure to have been offered remedial

driving training; a violation of his liberty interest in employment and right to travel; and a violation of his First Amendment right of association and his Sixth Amendment right to confront witnesses.

Defendants filed a motion for summary judgment on October 16, 2006.  In his response brief, Orleski withdrew his claims based upon his First Amendment right of association, his Sixth Amendment right to confront witnesses, and his property interest in continuing employment with the City of Erie.

## II.     STANDARD FOR REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party.  Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id.  (quoting Matsushita, 475 U.S. at 587).

## III.     ANALYSIS
### A.     Due Process/Property Interest in Remedial Training

In order to establish a violation of the right to procedural due process, a plaintiff, in addition to proving that a person acting under color of state law deprived him of a protected

property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.  Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3rd Cir. 1991).  "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property."  Elmore v. Cleary, 399 F.3d 279 (3rd Cir. 2005) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3rd Cir. 2000)).  A property interest can be created by statutory provision, contractual provision, implied contractual provision, or ordinance.  Bishop v. Wood, 326 U.S. 341, 344 (1976).

Although Orleski concedes that, as a probationary employee, he did not have a protected property interest in his employment with the City of Erie, see Elmore, 399 F.3d at 282 (holding that probationary employees do not have a property interest in continued employment), he contends that he did have a property interest in remedial driving training.  Orleski asserts that the City of Erie had a well-established policy and practice of offering remedial training to patrolmen who were failing any portion of their training.  Therefore, he contends that the decision by the Termination Review Committee not to offer him remedial training for his perceived driving deficiencies violated procedural due process.

It is undisputed that the alleged right to remedial training asserted by Orleski did not appear in any regulation, memorandum, or other written rule of the Police Department. (Transcript, Hearing on Defendant's Motion for Summary Judgment, February 12, 2007, pp. 17, 27) ("Transcript").  Rather, the probationary officers were informally notified during orientation that if they were having trouble with any portion of their training, they could seek remedial training.  However, in the context of driving an automobile, it is undisputed that no other officer had ever needed or sought remedial training.  (Transcript, p. 27).  Indeed, Defendants note, and we agree, that it is difficult to envision exactly what remedial training would entail relative to the operation of an automobile.  Given his status as a probationary employee, the lack of any written or de facto policy creating a right to remedial training in the context of operating an automobile,

and the fact that no officer had ever received remedial training in this area, we conclude that Orleski did not have a protectable property interest in remedial driving training such that he could not be denied said remedial training without a hearing.

**B.    Liberty Interest in Future Employment**

Orleski next asserts that Chief Bowers and the Erie Police Department deprived him of a liberty interest in future employment by making defamatory statements to VA employees which damaged his reputation and allegedly resulted in his failure to obtain the open officer position with the VA.  A public employee who has been dismissed has a cognizable liberty interest under Section 1983 when the dismissal is based upon charges which stigmatize the employee and "the employer creates and disseminates a defamatory impression about the employee in connection with the termination."  Codd v. Velger, 429 U.S. 624, 628 (1978); Paul v. Davis, 424 U.S. 693 (1976).  The defamation must occur in the course of terminating the individual's employment. Id. at 710; see also Freeman v. McKellar, 795 F.Supp. 733, 738 (E.D. Pa. 1992).  Thus, "in order to withstand a motion for summary judgment . . . plaintiff must proffer competent evidence that, *in the course of his dismissal*, defamatory assertions were made."  Brennan v. Hendrigan, 888 F.2d 189, 196 (1st Cir. 1989) (emphasis in original); Davis, 424 U.S. at 710.

When a public employer has impugned an employee by defamatory remarks in the course of a termination, due process requires that the employer provide a "name-clearing" hearing.  It is the failure of a public employer to provide a name clearing hearing that is an affront to the employee's due process rights.  Codd, 429 U.S. at 628; Davis, 424 U.S. at 710.  Where due process has been denied, the appropriate remedy is to provide the aggrieved employee with a name-clearing hearing to refute the charge.  Id. at 629.  Thus, "a federal constitutional claim arises not from the defamatory or stigmatizing conduct per se but from the denial of a name clearing hearing."  In re Selcraig, 705 F.2d 789, 797 (5th Cir. 1983); Puchalski v. School District of Springfield, 161 F.Supp.2d 395, 406 (E.D. Pa 2001).

Orleski's liberty interest claim fails.  Orleski was suspended and ultimately terminated for perceived bad driving.  It is undisputed that when the Field Training Officer Termination Review Committee convened to discuss Orleski's suspension and subsequently decided to end his employment, it did so exclusively on the basis of Orleski's driving record.  Orleski, however, does not base his claim on Bowers' comments to Reyes about his driving record.  Indeed, he could not.  Accusing Orleski of being a bad driver did not stigmatize him for purposes of triggering the protection of the Fourteenth Amendment.  See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3rd Cir. 1990) (defining a defamatory statement as one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.").   Rather, he bases his defamation claim on the statements allegedly made by Bowers to VA personnel concerning female harassment, disturbances in a bar, and impersonating a police officer.[1]  The fundamental disconnect, however, is that his suspension and ultimate dismissal from the EPD were **not** based on these accusations or charges.  As we stated previously, a federal constitutional claim arises not from the defamatory or stigmatizing conduct per se, but from the denial of a name clearing hearing.  Selcraig, 705 F.2d at 797; Puchalsky, 161 F.Supp.2d at 406.  Quite simply, the Plaintiff could not have requested a hearing to clear his name as to allegations that did **not** form the basis for his dismissal.

Even if the allegations allegedly made by Bowers to the VA personnel had formed the basis for his dismissal from the EPD, Orleski would fare no better because the alleged defamation would not have occurred in the course of terminating his employment.  In Brennan, the First Circuit held that defamatory comments made to a newspaper by a former employer about an employee who had been terminated two months earlier could not "conceivably be categorized as, or assumed to recount, matters occurring 'in the course of the termination.'"

---

[1]     Of course, for purposes of summary judgment, we assume that Bowers made these statements.

Brennan, 888 F.2d at 196 (citing Laureano-Agosto v. Garcia-Caraballo, 731 F.2d 101, 104 (1st

Cir. 1984)).  Similarly, in Puchalski, the district court reviewed comments made six months and

"more than a month" after the non-renewal of an employee's contract and concluded that "[t]here

is no evidence that defendants made the pertinent statements *while declining to renew*

[plaintiff's] contract."  Puchalski, 161 F.Supp.2d at 406-407 (emphasis added).  Here, Bowers'

allegedly defamatory statements to the VA were made more than two months after the decision to

terminate Orleski.

### C.      Interference with Right to Travel

Orleski alleges that the City of Erie deprived him of his constitutional right to travel as

secured by the Fourteenth Amendment by following him in police cars while he was driving and

parking near his residence for extended periods of time.  The constitutional right to travel, as

described by the United States Supreme Court, generally invokes one of three components: (1)

the right of a citizen of one state to enter and leave another state; (2) the right to be treated as a

welcome visitor rather than an unfriendly alien when temporarily present in the second state; and

(3) for those travelers who elect to become permanent residents, the right to be treated like

citizens of that state.  Saenz v. Roe, 526 U.S. 489 (1999).  Orleski's allegations fail to satisfy any

of the three components described in Saenz.

### IV.    CONCLUSION

For the reasons set forth herein, we hereby grant Defendants' motion for summary

judgment and dismiss this action.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN ORELSKI,                                           )
                                                        )
                        Plaintiff,                      )
            v.                                          )          C.A. No. 05-317 Erie
                                                        )          District Judge McLaughlin
CHARLES BOWERS, Chief of City of Erie                   )
Police Department, *et al.*,                            )
                                                        )
                                                        )
                        Defendants.                     )

## **ORDER**

AND NOW, this 5th day of September, 2007, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants Charles Bowers, *et al.*, is hereby GRANTED.  This action is DISMISSED.


                                        /s/ Sean J. McLaughlin
                                        United States District Judge


cm: All parties of record. ___